STATE OF NEBRASKA, PLAINTIFF, V. FARMERS & DROVERS BANK OF BATTLE CREEK, DEFENDANT, AND E. TILLOTSON, INTERVENOR.

FILED APRIL 11, 1893.    No. 4821.

Evidence in the record examined, and *held* to sustain the finding of the referee in favor of the claimant.

ORIGINAL action to wind up the affairs of the Farmers & Drovers Bank of Battle Creek, Nebraska, under the banking law of 1889.

The receiver appointed by the court refused to allow the claim of E. Tillotson, and a referee was appointed to investigate the validity thereof. The finding was in favor of Tillotson, and the receiver excepted. *Exceptions overruled.*

*Wigton & Whitham,* for intervenor.

*George H. Hastings, Attorney General,* for receiver.

POST, J.

The Farmers & Drovers Bank of Battle Creek was impounded under the provisions of the state banking law, and is now in the hands of a receiver and under the jurisdiction of this court. Among the claims presented to the

receiver for allowance was one by E. Tillotson for $3,000 and interest at six per cent from February 24, 1891, on account of eight certificates of deposit of said bank for $375, each bearing the date above named. The receiver, for reasons which will appear from this opinion, refused to allow said claim, and referred it to the court for advice. By agreement of the claimant and the attorney general representing the receiver, the questions involved in the controversy were submitted to a referee with instructions to find the facts and state his conclusions of law, and who subsequently submitted the following report:

"First—That on or about the 24th day of February, 1891, the Farmers & Drovers Bank of Battle Creek, Nebraska, made and delivered to E. Tillotson its twelve certificates of deposit of three hundred and seventy-five dollars each, aggregating $4,500, due and payable, the first in one month, and the others at intervals of one month each thereafter, all drawing interest at six per centum per annum.

"Second—That said Farmers & Drovers Bank paid the first four of said certificates of deposit on the receipt of same by the bank in the usual course of business, and that E. Tillotson is the holder and owner of the remaining eight certificates of deposit, and that the same are due and wholly unpaid.

"Third—That the said certificates of deposit were presented to the Farmers & Drovers Bank, or the receiver thereof, at their maturity, and payment demanded, and refused for want of funds, or from want of an order of court directing payment.

"Fourth—That the consideration for the issuance of said certificates of deposit was two certain notes and mortgages, designated as the 'Dinkle and Tiedgen notes,' of a face value of $5,000, several small unsecured notes of a face value of about a thousand dollars, and a small balance on deposit with the bank amounting to $137.

"Fifth—That the sale of these securities was made by E. Tillotson in person, and on the faith of the solvency of the bank, with which he dealt, through its president, R. H. Maxwell.

"Sixth—That said certificates of deposit were never entered as a charge or liability of the bank on its books, but of this E. Tillotson had no knowledge until long after the issuance thereof, but had reason to believe and did believe that said certificates represented a *bona fide* indebtedness of the bank to the owners of said certificates.

"Seventh—That at the time of the issuance of the said certificates of deposit E. Tillotson had no knowledge of the insolvency of the bank issuing them, but took them in the ordinary course of business, in good faith, relying on the solvency of the bank and the *bona fides* of the whole transaction for his security.

"CONCLUSIONS OF LAW.

"That the amount of three thousand dollars, with interest thereon at six per centum per annum from and after the 24th day of February, 1891, is justly due and owing to E. Tillotson from the Farmers & Drovers Bank of Battle Creek, Nebraska, and that the receiver of said bank should enter for payment and pay the said certificates of deposit, as other claims not contested."

Upon the coming in of the above report a motion for confirmation thereof was made by the claimant, and exceptions thereto were filed by the receiver, which are submitted together. In considering the questions presented by the exceptions it is necessary to refer to some facts disclosed by the record in addition to those found by the referee. From some time in the year 1887 until the 1st day of July, 1890, R. H. Maxwell was conducting a private bank at Battle Creek, Nebraska, known as the Farmers & Drovers Bank, and also engaged in negotiating loans upon real estate. Among his clients was Tillotson, the claimant, for whom he negotiated several loans, the mort-

gages, notes, and coupons, so far as the record shows, being ·executed in favor of Mary E. Tillotson. About the date last named said bank was incorporated under the laws of the state, Maxwell being at all times thereafter its president, and B. Meyel its cashier. About the 24th day of February, 1891, Tillotson, who was then a resident of Chicago, visited Battle Creek for the purpose of closing up his business there. At that time he had a conversation with Maxwell, at which was discussed the sale to the latter of the securities described in the referee's 4th finding, the Dinkle mortgage being for $2,000 and the Tiedgen mortgage for $3,000, both maturing June 1, 1893, and both bearing interest at eight per cent per annum. He admits that Maxwell proposed to give his individual note for the agreed amount of $4,500 and that he offered to accept a note with either of two persons named as security. The secured note not being given, it was agreed that Maxwell should issue twelve certificates of deposit payable to Tillotson's order for $375 each, the first payable one month after date and one maturing on the 24th day of each month thereafter. In pursuance of that agreement the twelve certificates of deposit were issued and delivered. As to the exact terms of said contract there is a sharp conflict of testimony. Maxwell testifies that he did not represent the bank, but on the contrary it was well understood by Tillotson to be his individual venture, and that the certificates, although issued in the name of the bank, were accepted as his personal obligation. He further testifies that they were to be secured by stock of the bank of face value twice the amount of the certificates. Tillotson on the other hand testifies that his agreement was with the bank alone and asserts that he did not at any time agree to accept Maxwell's personal obligation. The attendant facts, so far as they shed any light upon the subject, are as follows: Upon the conclusion of the agreement between them, Tillotson indorsed each of the mortgages, notes, and coupons attached thereto as follows:

"Pay R. H. Maxwell, or order, without recourse on me,
"MARY E. TILLOTSON, per E. T."

The certificates of deposit do not bear the then current numbers, but appear to have been issued out of the regular order in that respect, and were never entered upon the books as liabilities of the bank; nor were the securities assigned by Tillotson to Maxwell entered at the time of the transaction upon the books of the bank, but on the 27th day of February, according to the testimony of both Maxwell and Meyel, the cashier, they were discounted by the bank; and the several notes and coupons appear upon the discount register under the date last named.    There is also upon the daily cash book, under date of February 27 and 28, the following entry :

"Maxwell, R. H.    Tillotson, Disc..............$1,000."

It also appears from the books that four of the said certificates were paid by the bank as they matured and the amount thereof charged to Maxwell's account.    The certificates of deposit are *prima facie*, the obligation of the bank, and the burden is upon the receiver to show that they were issued without authority.    The material question is therefore one of fact.    It is not contended that the purchase of the securities by Maxwell in behalf of the bank would be *ultra vires*.    On the other hand it is quite as clear that if the latter, and not the bank, was the purchaser, the certificates of deposit are without consideration and void in the hands of the payee.    Although the testimony or Maxwell is corroborated by many of the facts we have mentioned it fails to sustain the claim of the receiver.    The proposition that Tillotson would exchange $5,000 in notes amply secured by mortgage bearing interest at eight per cent, not to mention $1,000 in notes held by the bank for collection for Maxwell's personal obligation for $4,500, at six per cent, and that after the latter had confessed his inability to give personal security, is too unreasonable to be accepted upon a bare preponderance of the evidence.    The proofs fail to

satisfy us that the certificates of deposit are not what they appear to be, the obligations of the bank. It follows that the exceptions of the receiver should be overruled and the report of the referee confirmed.

REPORT CONFIRMED.

THE other judges concur.